United States Court of Appeals

For the Eighth Circuit

_____

No. 18-1933
_____

Geronimo DeLuna

*Plaintiff - Appellant*

The State of Minnesota, Department of Human Services

*Plaintiff*

v.

Mower County; Terese Amazi, Mower County Sheriff; Chris Fletcher, Mower County Correctional Officer; Officers John Doe 1 through John Doe 10

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 12, 2019
Filed: August 21, 2019
_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Geronimo DeLuna and the Minnesota Department of Human Services ("MDHS") brought this negligence action after an official at the Mower County,

Minnesota Jail (where DeLuna was serving time) provided and made DeLuna wear shoes that were too small for his feet. DeLuna says the shoes caused a blister on one of his left toes, which ultimately resulted in a severe infection requiring multiple corrective surgeries. The district court granted summary judgment in favor of Mower County ("County"), and DeLuna appeals. Because we conclude there is a genuine issue of material fact as to whether the County negligently caused DeLuna's injury and that it is not entitled to vicarious official immunity, we reverse.

## I. Background

In December 2014, DeLuna began serving a 180-day sentence at the jail for a driving-related offense. All inmates at that location were required to wear "Croc"-style[1] slip-on shoes provided by the jail.

On February 10, 2015, a jail officer took away DeLuna's old slip-on shoes and made him wear a replacement pair.[2] DeLuna quickly noticed the shoes were too tight and rubbed against his feet. DeLuna wore a men's size ten but says the new shoes were a women's size ten. Later that day, DeLuna complained to a jail officer about his shoes being too small, but he was told no other shoes were available at that time and his old slip-on shoes had been thrown out. DeLuna says he then suffered a blister on his left foot's middle toe, and he complained to a jail sergeant about having a sore toe. The jail's medical records say DeLuna refused to see a nurse because he wanted to continue participating in the jail's "Sentence to Serve" program ("STS"), which allows inmates to perform volunteer community work (often outdoor manual labor)

---

[1] The record is unclear whether the shoes were CROCS-brand shoes or a similar style of slip-on shoes.

[2] Except as otherwise noted, we recite these facts in the light most favorable to DeLuna as the nonmoving party before the district court. *Oglesby v. Lesan*, 929 F.3d 526, 531–32 (8th Cir. 2019).

Appellate Case: 18-1933     Page: 2     Date Filed: 08/21/2019 Entry ID: 4821350

to reduce the length of their sentences. DeLuna, however, denies refusing treatment that day.

The next day, on February 11, DeLuna participated in the STS program from 7:45 a.m. until 4 p.m. and wore his own personal shoes, as was allowed during STS work hours. Upon returning to the jail, DeLuna says a jail officer noticed the third toe on DeLuna's left foot had a blister. DeLuna told the officer the slip-on shoes he had been wearing were too small, and the officer immediately provided DeLuna with a larger, better-fitting pair. The jail's medical records show DeLuna complained that day to a jail officer again about a sore toe (DeLuna later testified his toe "was just blowing up" by then) and that he still refused to see a nurse. DeLuna also denies he refused treatment on February 11.

On February 12, DeLuna says his left foot was in such pain he could not get out of bed. He filled out a "Sick Call Request Form" seeking treatment. He was examined by the jail's nurse, who completed a medical report stating DeLuna's injured toe was "warm [and] swollen" and that DeLuna said it began as a blister. The nurse prescribed an antibiotic to be taken twice a day and instructed DeLuna to keep the toe clean, apply a topical ointment, and wrap it in gauze. DeLuna said his toe had an open sore by that point.

On the evening of February 13, the jail's overseeing officer observed DeLuna's toe was "purple and leaking." The officer drew a line toward the top of DeLuna's foot and told him to let the jail know if the redness and swelling progressed beyond the line. It soon did, and the jail's doctor recommended DeLuna be taken to a hospital. Jail staff took DeLuna to a Mayo Clinic emergency room.

DeLuna was diagnosed with having Methicillin-Resistant Staphylococcus Aureus ("MRSA"), a super-strain of staph infection resistant to usual penicillin-based medication. DeLuna remained in the hospital for ten days and underwent three

Appellate Case: 18-1933    Page: 3    Date Filed: 08/21/2019 Entry ID: 4821350

surgeries on his left foot to remove the infection. As a result, DeLuna says he has a large scar running down the middle of his foot and residual sharp pains in the same area. MDHS paid his sizeable medical bill.

DeLuna and MDHS brought a lawsuit in state court against the County, the County Sheriff, and a number of jail officers, raising four counts: (1) negligence in providing shoes that were too small, resulting in his MRSA infection; (2) negligence in providing an environment infested with bacteria and viruses, including MRSA; (3) willful failure to provide adequate medical treatment in violation of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983; and (4) failure to adequately train jail officers in providing suitable shoes, adequate medical care, and a safe environment in violation of the same rights. The defendants removed the suit to federal district court and, following discovery, moved for summary judgment on all claims. DeLuna then voluntarily dismissed all claims and defendants except his negligence action against the County for providing undersized shoes.

Exercising supplemental jurisdiction under 28 U.S.C. § 1367(a), the district court granted summary judgment to the County on DeLuna's negligence claim. The district court concluded DeLuna failed to show the County breached a duty of care because contracting MRSA was not a foreseeable danger of wearing shoes that were too small for less than 24 hours. The district court also concluded DeLuna failed to show any breach proximately caused his injuries because, based on testimony from the County's expert witness, "many other causative factors exist that could have developed the MRSA infection," including DeLuna's history of drug abuse and the fact he had multiple tattoos.

In addition, the district court ruled that, regardless, the County was entitled to vicarious official immunity under Minnesota law. The district court concluded (a) providing inmates with "suitable" shoes (as required by a state statute) was a *discretionary* duty because it involves the exercise of *some* discretion, and (b) the

Appellate Case: 18-1933     Page: 4     Date Filed: 08/21/2019 Entry ID: 4821350

jail's officers did not act willfully and maliciously in providing DeLuna with too-small shoes — thus satisfying the state-law predicates for vicarious official immunity. The district court distinguished *Wendt v. City of Mille Lacs*, No. A13-0114, 2013 WL 4711210 (Minn. Ct. App. Sept. 3, 2013) (unpublished), which held that a Minnesota county violated a *ministerial* duty and was *not* entitled to immunity when it provided extremely *large* shoes to an inmate for her court hearing, after which she tripped on her shackles and fell down the courthouse steps. *Wendt*, 2013 WL 4711210, at *2, *6. The district court noted that *Wendt* was an unpublished decision and that "correctional officers are entitled to some discretion regarding what size of shoe they provide to inmates." DeLuna now appeals.

## II. Discussion

DeLuna argues the district court's negligence ruling was erroneous for two reasons: (1) under Minnesota law, only his blister and open sore, rather than his MRSA infection, needed to be foreseeable to conclude the County breached its duty of care; and (2) his MRSA infection was a natural and proximate result of having a blister and open sore. He also disputes the district court's immunity ruling, arguing that providing suitable jail shoes was a *ministerial* duty for which vicarious official immunity was not available to the County.

This court reviews a district court's grant of summary judgment de novo, "viewing the evidence in the light most favorable to the nonmoving party." *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010). "We will affirm the grant of summary judgment if 'there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" *Id*. (alteration in original) (quoting Fed. R. Civ. P. 56).

To prevail in a negligence claim under Minnesota law, "a plaintiff must prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that

-5-

Appellate Case: 18-1933     Page: 5     Date Filed: 08/21/2019 Entry ID: 4821350

the breach of the duty of care was a proximate cause of the injury." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011). Under Minnesota law, counties are vicariously liable for the negligence of employees acting within the scope of their employment unless the doctrine of vicarious official immunity applies. *See City of Minneapolis v. Ames & Fischer Co. II*, 724 N.W.2d 749, 755 (Minn. Ct. App. 2006) ("Municipalities are generally liable for the torts of their employees if the tort is committed within the scope of employment."); *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462–63 (Minn. 2014) (discussing vicarious official immunity).

### A. Duty and Breach

We first consider whether the County breached a duty of care by providing DeLuna with shoes that were too small for his feet. Although DeLuna argues the County's duty was defined by Minn. Stat. § 641.15, subd. 1 — which expressly requires counties to "provide suitable jail clothing" to inmates — he does not press an argument that the County was negligent per se. *See Kronzer v. First Nat'l Bank of Minneapolis*, 235 N.W.2d 187, 192 (Minn. 1975) ("[T]he measure of duty for negligence per se is fixed by the statute, so that its violation constitutes conclusive evidence of negligence."). Nor does DeLuna base his claim on the "special relationship" between a jail and its inmates, *see Cooney v. Hooks*, 535 N.W.2d 609, 611 (Minn. 1995), as that doctrine generally applies in Minnesota only where, unlike here, a *third party* creates a foreseeable risk of harm to the plaintiff. *See, e.g., Domagala*, 805 N.W.2d at 23. Rather, DeLuna argues that requiring someone to wear too-small shoes creates a foreseeable risk of causing a blister and open sore.

DeLuna's argument invokes classic rules of Minnesota negligence law. "[G]eneral negligence law imposes a general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Id.* The Minnesota Supreme Court has emphasized the key is whether a defendant had "reasonable ground to anticipate that a particular act would or might

Appellate Case: 18-1933    Page: 6    Date Filed: 08/21/2019 Entry ID: 4821350

result in *any* injury" to the plaintiff, even if the defendant "could not have anticipated the particular injury which did happen." *Christianson v. Chicago, St. P., M. & O. Ry. Co.*, 69 N.W. 640, 641 (Minn. 1896) (emphasis added) (assuming defendant breached a duty of care even though plaintiff's ultimate injury was not foreseeable). As a more recent Minnesota case recognized: "What a man may reasonably anticipate is important . . . in determining whether an act is negligent." *Lundgren v. Fultz*, 354 N.W.2d 25, 28 (Minn. 1984) (quoting *Christianson*, 69 N.W. at 641).

We hold there is a genuine issue of fact as to whether the County breached its duty of care. The district court erred when it concluded to the contrary on the basis that DeLuna's MRSA infection was not a foreseeable consequence of wearing too-small shoes. Rather, the proper question was whether *some* harm was foreseeable even if the ultimate injury was not. *Christianson*, 69 N.W. at 641. And requiring DeLuna to wear too-small shoes that rubbed against his feet (and failing to replace them when he complained later that day) could foreseeably result in at least a blister.[3] That is enough for a factfinder to reasonably conclude the County breached its duty of care.

### B. Proximate Cause and Harm

But our analysis does not end there. DeLuna must still show the County's negligent conduct proximately caused his MRSA infection. *Domagala*, 805 N.W.2d at 22. DeLuna argues it did just that because contracting a MRSA infection "naturally flow[s]" from having an open sore caused by the too-small shoes.

---

[3]Whether too-small shoes could also foreseeably cause an open sore is, at best, a close case, and "[i]n close cases, the issue of foreseeability should be submitted to the jury." *Domagala*, 805 N.W.2d at 27. But we find this question irrelevant given our conclusion that at least *some* injury was arguably foreseeable without regard to the foreseeability of the open sore.

Appellate Case: 18-1933   Page: 7   Date Filed: 08/21/2019 Entry ID: 4821350

We first note that foreseeability is *not* part of the proximate-cause analysis in Minnesota. *Dellwo v. Pearson*, 107 N.W.2d 859, 861 (Minn. 1961). Instead, if a person's "act itself is negligent, then the person guilty of it is equally liable for all its natural and proximate consequences, whether he could have foreseen them or not." *Id.* (quoting *Christianson*, 69 N.W. at 641). Minnesota courts look to whether the injury "follow[s] in an unbroken sequence, without an intervening efficient cause, from the original negligent act." *Id.* (quoting same). But an intervening cause is not *superseding* and thus insulating for a defendant unless it has satisfied several criteria, including that it "actively worked to bring about a result which would not otherwise have followed from the original negligence" and was not "reasonably foreseeable by the original wrongdoer." *Canada ex rel. Landy v. McCarthy*, 567 N.W.2d 496, 507 (Minn. 1997).

We also note a defendant's conduct must be a "substantial factor in bringing about the injury." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (quoting *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn. 1980)). Additional causes may be "concurring" and thus "direct causes which act . . . so nearly together [with the defendant's conduct] that the chain of causation is not broken." *Roemer v. Martin*, 440 N.W.2d 122, 123 n.1 (Minn. 1989).

Finally, although proximate cause is a question of law "where reasonable minds can arrive at only one conclusion," it is otherwise generally a question of fact for the factfinder. *Lubbers*, 539 N.W.2d at 402.

DeLuna argues the district court relied too heavily on the defendant's expert testimony that the MRSA infection could have resulted from numerous other causes. Specifically, the district court pointed to the testimony of Dr. Randal Wojciehoski, who evaluated DeLuna's medical record and testified "it is impossible to pinpoint where Mr. DeLuna contracted MRSA" given his history of high-risk behavior, intravenous drug abuse, and the fact he has multiple tattoos, all of which placed him at

Appellate Case: 18-1933     Page: 8     Date Filed: 08/21/2019 Entry ID: 4821350

risk for developing MRSA. DeLuna argues this testimony does not contradict evidence tending to show he contracted the infection on his toe as a result of wearing the too-small shoes. At this stage of the litigation, we agree.

The evidence before us presents at least a factual question as to whether the too-small shoes were a substantial (even if not exclusive) factor in causing DeLuna's MRSA infection. The County itself introduced a journal article explaining MRSA has become an acute problem in correctional facilities and can infect a person by entering "even through the tiniest cut on the skin." And there is evidence tending to show DeLuna's infection began not in the area of a tattoo, but on his left foot's third toe where DeLuna says he suffered a blister from the too-small shoes. To the extent DeLuna's past drug abuse rendered him more vulnerable to contracting MRSA as a result of a toe injury, the "eggshell plaintiff doctrine" would prevent the County from disclaiming responsibility for his ultimate harm. *See Rowe v. Munye*, 702 N.W.2d 729, 741 (Minn. 2005) ("The eggshell plaintiff doctrine states that '[w]here a tort is committed, and injury may reasonably be anticipated, the wrongdoer is liable for the proximate results of that injury, although the consequences are more serious than they would have been, had the injured person been in perfect health.'" (alteration in original) (quoting *Ross v. Great Northern Ry. Co.*, 111 N.W. 951, 953 (1907))).

The County argues in rebuttal that DeLuna's theory is founded on speculation and conjecture. *See E.H. Renner & Sons, Inc. v. Primus*, 203 N.W.2d 832, 835 (Minn. 1973) ("Proof of a causal connection must be something more than merely consistent with the complainant's theory of the case."). The County specifically argues there is no record evidence "[o]ther than DeLuna's assertions" that he suffered a blister and open sore as a result of the too-small shoes. It also indicates DeLuna needed expert testimony to establish a proximate connection between wearing the too-small shoes and his MRSA infection.

Appellate Case: 18-1933   Page: 9   Date Filed: 08/21/2019 Entry ID: 4821350

We disagree. DeLuna testified in his deposition that he personally felt the too-small shoes rubbing against his feet before observing a blister on the middle toe of his left foot. The nurse's medical report also says DeLuna reported that his swollen toe began as a blister. We cannot ignore these statements without assessing DeLuna's credibility — a "function of the jury, not an appellate court." *United States v. Hernandez*, 569 F.3d 893, 897 (8th Cir. 2009) (quoting *United States v. Harrison*, 671 F.2d 1159, 1162 (8th Cir. 1982)). This case is also not one requiring supporting testimony from an expert witness to explain "matters not within the common knowledge of a layman." *DeCourcy v. Trs. of Westminster Presbyterian Church, Inc., of Minneapolis*, 134 N.W.2d 326, 328 (Minn. 1965). A layperson can understand based on common knowledge whether too-small shoes caused a blister and whether, as a proximate result, that blister opened and became infected.[4] On the facts before us, we cannot say DeLuna's case is based on speculation.[5]

Therefore, we conclude DeLuna has presented a triable issue of fact as to whether the County negligently caused his MRSA infection.

---

[4]We reject the County's argument that DeLuna did not contend before the district court that the shoes caused both a blister *and* an open sore which ultimately became infected. Without opining on what point in time DeLuna contracted the infection, we note DeLuna argued in his complaint the too-small shoes "caused him to develop an open wound in the jail environment" and thus "exposure to . . . MRSA."

[5]We also cannot say at this stage that DeLuna's physical labor in the STS program the day after wearing the too-small shoes and his alleged refusal to receive medical care were *superseding* causes. There is at least a fact question as to whether DeLuna's infection would have occurred anyway given that he first reported a sore toe the same day he wore the too-small shoes. And he denies that he refused treatment. These questions, too, are for a factfinder.

-10-

Appellate Case: 18-1933    Page: 10    Date Filed: 08/21/2019 Entry ID: 4821350

## C. Vicarious Official Immunity

We have one more step. The County argues that even if it was negligent, it is entitled to vicarious official immunity.

The Minnesota Supreme Court has held that under the "common law doctrine of official immunity . . . [,] a public official who is charged by law with duties calling for the exercise of *judgment or discretion* is not personally liable to an individual for damages unless the official is guilty of a willful or malicious act." *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998) (emphasis added). And government employers are generally entitled to vicarious official immunity from lawsuits based on the discretionary acts of their employees. *See id.* at 317. Vicarious official immunity does not apply, however, to ministerial duties — i.e., those "in which nothing is left to discretion" and "involv[e] merely execution of a specific duty arising from fixed and designated facts." *Id.* at 315 (quoting *Cook v. Trovatten*, 274 N.W. 165, 167 (Minn. 1937)). In other words, "[w]hen the job is 'simple and definite' and therefore 'clearly ministerial,' the [government employer] is not entitled to [vicarious] official immunity." *Id.* at 316.

We hold the duty of providing suitable shoes in a county jail setting is ministerial. As we have already noted, the Minnesota Court of Appeals reached this same conclusion in *Wendt*, relying on the obligation of county boards under Minn. Stat. § 641.15, subd. 1 to "provide suitable jail clothing" to prisoners. *Wendt*, 2013 WL 4711210, at *6. Although this decision was unpublished, we are not convinced the Minnesota Supreme Court would disagree. In *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, the Minnesota Supreme Court observed "the mere existence of some degree of judgment or discretion will not necessarily confer common law official immunity; rather, the focus is on the nature of the act at issue." 678 N.W.2d 651, 656 (Minn. 2004). In *Wiederholt*, for example, the Minnesota Supreme Court held that city sidewalk inspectors had a ministerial duty to repair broken sidewalks

where city code required the "City Engineer to immediately repair [any broken sidewalk] in a good, substantial, and thorough manner." 581 N.W.2d at 314, 316 (emphasis omitted) (alteration in original) (quoting Minneapolis, Minn., Code of Ordinances ch. 8, § 12 (1991)).

Here, the provision of suitable jail shoes is a simple act and defined by the designated facts of a prisoner's shoe size. Even if there is some degree of judgment involved in light of a prison's limited resources, this duty is sufficiently "simple and definite" so as to be ministerial. Therefore, the County is not entitled to vicarious official immunity.

### III. Conclusion

For the reasons discussed herein, we reverse the judgment of the district court.

_____

Appellate Case: 18-1933     Page: 12     Date Filed: 08/21/2019 Entry ID: 4821350